IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Jo Anne Newsome,
    Plaintiff

v.

Michael J. Astrue,
Commissioner of Social Security,
    Defendant

Civil Action 2:09-cv-285

Judge Sargus

Magistrate Judge Abel

**ORDER**

This matter is before the Court on plaintiff Jo Anne Newsome's November 24, 2009 objections to Magistrate Judge Abel's November 12, 2009 Report and Recommendation. The Court, having reviewed the record *de novo*, determines that there is substantial evidence supporting the administrative law judge's determination that plaintiff Newsome is not disabled within the meaning of the Act. The Court further finds for the reasons set out below that plaintiff's objections to the Report and Recommendation are without merit.

Plaintiff Newsome sought disability benefits alleging that she became disabled at age 51 by a back impairment. The administrative law judge found that Newsome had the residual functional capacity to perform medium so long as it did not require working on unprotected heights, climbing ladders, ropes, or scaffolds, working around hazardous machinery or in an area where she would be exposed to vibrating equipment, and required only occasional squatting and climbing. The administrative

law judge concluded that Newsome retained the ability to perform her previous work as a general office helper and as a food service worker.

Plaintiff argues that the administrative law judge erred in rejecting the opinion of her treating chiropractor that she can lift no more that 10 pounds, 5 pounds frequently; sit, stand and walk for no more than 4 hours a work day, 30 minutes at a time; and cannot squat, bend, stoop, twist, climb ladders, push or pull. Plaintiff asserts that the administrative law judge formed a lay opinion about Newsome's residual functional capacity, which finds support only in the opinions of Doctors Manos, Villanueva and Loimil. But Doctors Manos and Villanueva only reviewed the medical record, and Dr. Loimil examined Newsome twice.

Plaintiff concedes that Dr. Willey did not cite medical tests or clinical findings to support his opinion but argues that this is immaterial because his opinion is consistent with the record as a whole. For example, there is evidence of marked degenerative changes between C5 and C6 (R. 156). In June 2004, physical therapist James Ferguson reported that Newsome was limited to light and sedentary activity and could not return to medium work. (R. 240.) Dr. Loimil reported positive straight leg raising . (R. 181.) A March 2002 MRI was consistent with disc disease at L3-4 and L4-5 (R. 201.) In January 2003, an evaluation at the Mountaineer Pain Relief & Rehabilitation Center found lumbar strain with mildly diminished range of motion and discomfort at the extremes of straight leg raising. (R. 203-05.) In March 2004, Dr. Craig reported limited range of motion and noted a small central disc herniation at T11-12. He diagnosed acute

2

lumbosacral strain with ongoing mechanical pain and moderately severe right sacroiliac pain and dysfunction. (R. 208.) In September 2004, Dr. Guberman reported that x-rays and an MRI showed L4 foraminal narrowing and T11 foraminal narrowing due to asymmetric disc bulging. (R. 413.) In January 2006, Dr. Nutter found pain with range of motion testing. (R. 418-25.)

Plaintiff further argues that there is evidence of severe depression. (R. 474-75.) In July 2004, Dr. Peterson concluded that Newsome would have difficulty relating to others at work. He said plaintiff's GAF was 55. (R. 303.)

The Report and Recommendation fairly summarizes Dr. Willey's office records and opinion on the issue of disability:

> Robin M. Willey, D.C. The record reveals Newsome treated with Dr. Willey, a chiropractor for a June 1999 back injury she suffered at work. The treatment began June 21, 1999 and continued through April 14, 2003. (R. 270-91.) The primary diagnosis was lumbo-sacral sprain/strain. (R. 273, 274 and 275.) In May 2000, Dr. Willey assessed Newsome's ability to return to work. (R. 279.) Dr. Willey indicated that Newsome could sit, stand, or walk for no more than four hours in a work day and only for 30 minutes at a time. *Id.* Newsome could lift and carry no more than 10 pounds. *Id.* Dr. Willey reported that Newsome was precluded from overhead reaching, above the shoulder work, and that she could not squat, bend, stoop, twist, climb ladders, push or pull. *Id.*
> There are no test results or clinical findings set out by Dr. Willey to support these limitations. The place on the form to explain "the mdecial necessity of not allowing a return to work" was left blank. *Id.*
> Dr. Willey reported to the Commissioner in June 2004 that Newsome had been treated for symptoms of low back pain, right sacroiliac pain, and right lumbar radic-ulopathy. (R. 270.) Dr. Willey indicated that when she examined Newsome in March 2003, she had limited range of motion and fixation muscle spasm. *Id.* Dr. Willey further indicated that Newsome had no clinical abnormalities. She had "spasms of the lumbar muscles" with intermittent radiculoptaty." *Id.* Her gait was normal. *Id.* Dr. Willey opined that Newsome would be able to sit for 30

3

> minutes at a time for 4 hours a day; stand for 30 minutes at a time for 4
> hours a day; and lift 10 pounds occasionally and 5 pounds frequently. *Id.*

November 12, 2009 Report and Recommendation, Doc. 14, at pp. 3-4. The Magistrate Judge found that the administrative law judge did not err in rejecting Dr. Willey's opinion on the issue of disability:

> <u>Treating Doctor: Discussion.</u> Newsome argues that the administrative law judge erroneously rejected the opinion of her treating chiropractor, Dr. Willey. Dr. Willey found greater restrictions on Newsome's work abilities than the administrative law judge. Newsome contends that Dr. Willey's opinion is consistent with the record as a whole. The Commissioner maintains that since Dr. Willey was a chiropractor, and not a medical doctor, her opinion was not entitled to any significant weight because it was not from an acceptable medical source. 20 C.F.R. §§ 404.1513, 416.913.
> 
> A chiropractor is not an acceptable source for such clinical findings. 20 C.F.R. § 404.1513(a). The Commissioner will consider information from other sources, such as a chiropractor, for the limited purpose of "help[ing] us understand how your impairment affects your ability to work." 20 C.F.R. § 404.1513(e). The United States Court of Appeals for the Sixth Circuit has held in the past that a chiropractor is simply not an acceptable source of medical evidence, such as findings on clinical examination. *See, Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997); *Hartranft v. Apfel*, 181 F.3d 358, 361-62 (3d Cir. 1999).
> 
> However, a recent Social Security Ruling calls into question the continuing validity of cases holding that an administrative law judge may refuse to consider clinical opinions from chiropractors because they are not acceptable medical sources. SSR 06-03p, 2006 WL 2329939, continues to assert that there must be "evidence from 'acceptable medical sources' to establish the existence of a medically determinable impairment" but provides that the same factors used to evaluate the opinions of "acceptable medical sources," see 20 C.F.R. §§ 404.1427(d) and 416.927(d), "can be applied to opinion evidence from 'other sources.'" Those factors include:
> - How long the source has known and how frequently the source has seen the individual;
> - How consistent the opinion is with other evidence;
> - The degree to which the source presents relevant evidence to support an opinion;
> - How well the source explains the opinion;

4

- Whether the source has a specialty or area of expertise related to the individual's impairment(s), and
- Any other factors that tend to support or refute the opinion.

SSR 06-03p. Although holding that the Ruling did not apply to the case before it because its effective date was after the date of the administrative law judge's decision being reviewed, the Sixth Circuit recently acknowledged that SSR 06-03p requires an administrative law judge to discuss the factors set out in the Ruling when evaluating the opinion of a treator who is not an acceptable medical source. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 541 (6th Cir. 2009).

Even so, a fact finder may consider the fact that a medical opinion is from an "acceptable medical source" when deciding whether to give it greater weight than an opinion from a source that is not an "acceptable medical source." But when the factors are applied to the facts in a particular case "an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source."

When determining plaintiff Newsome's residual functional capacity, the administrative law judge asserted that his evaluation of the evidence was "based on the requirements of 20 CFR 404.1529 and 416.02 and SSRs 96-4 and 96-7p. The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (R. 23.) After fairly summarizing the medical record, the administrative law judge found that plaintiff's complaints of pain were inconsistent with the x-rays, MRIs and clinical findings:

> [C]laimant has degenerative disc disease in her spine resulting in pain and muscle spasm. However, she has been examined on numerous occasions, and there have been no neurological deficits identified that would sub-stantial limit her ability to work. Bruce Guberman, M.D. examined the claimant . . . in September 2004 and . . . said that the claimant had a slight narrowing at L5-S1, but he said that her MRI findings were minimal. He said she had acute and chronic posttraumatic lumbosacral strain with no evidence of radiculopathy, and no evidence of motor, sensory or reflex abnormality in her lower extremities.
>
> An MRI examination in August 2005, compared with the MRI examin-ation in March 2002, showed only a slight progression of degenerative changes. There were no findings which would explain the claimant's reported radicular symptoms in her right lower extremity.

5

> Stephen Nutter M.D. examined the claimant at the request of the
> State Agency in January 2006 and reported a diagnosis of
> osteoarthritis and chronic cervical, thoracic, and lumbar strain with
> no evidence of radic-ulopathy. He said that the claimant had some
> diminished range of motion in her cervical and lumbar spine with no
> motor, sensory, or reflex ab-normalities. He said that she had
> complaints of pain in her cervical and lumbar spine when she
> performed range of motion testing. He said that she had no hip joint
> tenderness, but that her hip range of motion is reduced due to back
> pain.
>
> At the request of the State Agency, the claimant's chiropractor
> assessed the claimant's residual functional capacity in June 2004. He
> based his assessment on his treatment of the claimant through April
> 14, 2003. Dr. Willey indicated that the claimant could sit for up to
> four hours total in a workday for periods of up to 30 minutes at a
> time, that the claimant could stand or walk for up to four hours in a
> workday for periods of up to 30 minutes at a time, and that she was
> limited to lifting and carrying no more than 5 pounds frequently or
> 10 pounds occasionally.
>
> Diane C. Manos, M.D. reviewed the evidence and assessed the
> claimant's physical residual functional capacity at the request of the
> State Agency in August 2004. Dr. Manos assessed the claimant at the
> medium exertion level. Another state agency reviewing physician
> assessed the claimant's residual functional capacity at the medium
> exertional level in February 2006. Those assessments are given great
> weight, because they are con-sistent with the minimal objective
> findings. There are no objective findings in the record that would
> support restrictions with respect to sitting, stand-ing, or walking. The
> claimant's diminished range of motion is accommo-dated by the
> restriction to occasional squatting and climbing. She has
> demonstrated some instability with respect to walking and engaging
> in postural activities, and she has been accordingly restricted from
> work at unprotected heights and being exposed to hazardous
> machinery such as cutters, beaters, centrifuges, or vibrating
> equipment. She is unable to climb ladders, ropes, or scaffolds, and
> she has been accordingly restricted.

(R. 24-25.)

Here there are no clinical findings in the record by Dr. Willey, so the issue is whether the administrative law judge erred in his consideration of

6

Dr. Willey's opinion that Newsome was limited to a reduced range of work having sedentary exertional demands. Medical opinions are "judgments about the nature and severity of . . . impairment(s), including . . . symptoms, diagnosis and prognosis, what [one] can still do despite impairment, and [an individual's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Treating sources often express more than one medical opinion, including "at least one diagnosis, a prognosis and an opinion about what the individual can still do." SSR 96-2p, 1996 WL 374188, at *2. When an administrative law judge fails to give a good reason for rejecting a treator's medical opinion, remand is required unless the failure does not ultimately affect the decision, *i.e.*, the error is *de minimus*. *Wilson*, 378 F.3d at 547. So reversible error is not committed where the treator's opinion "is patently deficient that the Commissioner could not possibly credit it;" the administrative law judge's findings credit the treator's opinion or makes findings consistent with it; or the decision meets the goal of 20 C.F.R. § 1527(d)(2) but does not technically meet all its requirements. *Id.*

Here the administrative law judge's assessment did not expressly apply to Dr. Willey's residual functional capacity opinion the factors outlined in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d) such as the length of the relationship; the nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; and the extent to which the source is familiar with other information in the case record relevant to decision. Nonetheless, it is clear from a fair reading of the decision that the administrative law judge rejected Dr. Willey's residual functional capacity opinion after consider-ing most of the factors set out in SSR 06-03p. The x-rays, MRIs and findings on clinical examination support the administrative law judge's finding that Newsome has the impairments of chronic cervical, thoracic and lumbosacral strain. She has no neurological deficits, no atrophy, and no clinical, x-ray or MRI evidence of radiculopathy. Although Dr. Willey is a long-term treator for a Workers' Compensation covered claim, she did not support her residual functional capacity assessment with any x-ray, MRI or clinical findings. No examining physician reported findings that would support Dr. Willey's residual functional capacity opinion. Consequently, the administrative law judge did not err in rejecting Dr. Willey's residual functional capacity opinion.

*Id.*, at pp. 16-21.

Upon *de novo* review in accordance with the provisions of 28 U.S.C. §636(b)(1)(B), the Court **ADOPTS** the Report and Recommendation. Plaintiff's motion for summary judgment is **DENIED**. Defendant's motion for summary judgment is **GRANTED**. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is **DIRECTED** to enter **JUDGMENT** for defendant. This action is hereby **DISMISSED**.

2-24-2010

Edmund A. Sargus, Jr.
United States District Judge